**LEX TECNICA**
SAMUEL D. CASTOR, ESQ.
Nevada Bar No. 11532
NICHOLAS R. ANDERSON, ESQ.
Nevada Bar No. 13815
SCOTT WHITWORTH, ESQ.
Nevada Bar No. 15671
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Phone: (725) 239-8413
service@lextecnica.com

**CLAGGETT & SYKES TRIAL LAWYERS**
MICHAEL GAYAN, ESQ.
Nevada Bar No. 11135
KATRINA STARK, ESQ.
Nevada Bar No. 16006
1160 N. Town Center Drive, Suite 200
Las Vegas, NV 89144
Phone: (702) 333-7777
Mike@Claggettlaw.com
Katrina@Claggettlaw.com

*Attorneys for Plaintiffs and putative class*

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

OUR LADY OF VICTORY CATHOLIC CHURCH, (AKA SOCIETY OF ST. PIUS X, LAS VEGAS NEVADA, INC.); ALEXANDER NILL, individually and as managing member of GUBERLAND, LLC; MARK AND JENNY-LYNNE EDINGTON; MARTIN KELLY; WILLIAM WALKER II; DAVID LEE; JAYLEEN JAVIER; AMBRE HALL; MICHAEL DOYLE; TINA AND RADFORD SMITH; JOSEPH AND KATHLEEN MERHAR; STACY STANDLEY, EACH INDIVIDUALLY; SUN CITY SUMMERLIN COMMUNITY ASSOCIATION, INC.; THE VINEYARDS COMMUNITY ASSOCIATION; SILVER STATE GOLF INDUSTRY ALLIANCE (NON-PROFIT); SPANISH TRAILS MASTER ASSOCIATION; THE CARMELS AT SPANISH TRAIL ASSOCIATION; GARDENS AT SPANISH TRAIL ASSOCIATION; INNISBROOK ESTATES AT SPANISH TRAIL ASSOCIATION; ISLANDS AT SPANISH TRAIL ASSOCIATION; THE LINKS AT SPANISH TRAIL ASSOCIATION; AND SPANISH TRAIL COUNTRY CLUB, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

v.

SOUTHERN NEVADA WATER AUTHORITY,

Defendant.

Case No. 2:26-cv-01291-GMN-NJK

**PLAINTIFFS' OPPOSITION TO DEFENDANT SOUTHERN NEVADA WATER AUTHORITY'S MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF (ECF NO. 18)**

Plaintiffs, by and through undersigned counsel, respectfully submit this *Opposition to Defendant Southern Nevada Water Authority's Motion to Dismiss Plaintiffs' Amended Class Action Complaint for Injunctive and Declaratory Relief* (ECF No. 18) (the "Opposition"), which is based upon the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, and any oral argument as may be presented at the hearing on this Motion.

As a threshold matter, Plaintiffs' *Emergency* Motion to Remand is fully briefed and pending. (ECF Nos. 5, 11, 13). This case turns entirely on Nevada law. If the Court remands, it need not reach SNWA's Motion to Dismiss at all. However, should the Court reach the Motion, dismissal is still improper because SNWA's Motion does not challenge the claims Plaintiffs pleaded; rather, it recasts Plaintiffs' Nevada constitutional and statutory claims as federal claims, disputes well-pleaded facts, and asks the Court to resolve factual issues that cannot be decided under Rule 12(b)(6). **Therefore, the Court should remand this case without reaching Defendant's Motion**. Should the Court decline to remand this action, it should deny Defendant's Motion in its entirety.

DATED: June 30th, 2026.

**LEX TECNICA**

*/s/ Samuel D. Castor*
SAMUEL CASTOR, ESQ. (#11532)
SCOTT WHITWORTH, ESQ. (#15671)
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

MICHAEL GAYAN, ESQ. (#11135)
KATRINA STARK, ESQ. (#16006)
**CLAGGETT & SYKES TRIAL LAWYERS**
1160 N. Town Center Drive, Suite 200
Las Vegas, NV 89144

*Attorneys for Plaintiffs and putative class*

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This is a Nevada constitutional case centered on unlawful government overreach and the lack of due process. SNWA claims unilateral authority to determine what grass (and trees) can live as "functional" or must die as "non-functional" without oversight or due process for those impacted by these monumental decisions. Plaintiffs—a church, 14 homeowners, 9 homeowners' associations representing more than 10,000 homes, and a non-profit association representing 81 golf courses—allege the Southern Nevada Water Authority ("SNWA") seized enforcement powers the Nevada Legislature never granted it and now misleadingly compels the removal of grass across the Las Vegas Valley; killing trees, destroying private property, and harming residents. This is not a "handful of plaintiffs." (ECF No. 18 at 6:9).

Most importantly, every claim in Plaintiffs' Amended Class Action Complaint for Injunctive and Declaratory Relief ("FAC") arises under Nevada law: the Nevada Constitution, Nevada statutes, and Nevada regulations. None arise under federal law.

*SNWA's Strawman Sidesteps State Law Claims*. SNWA's Motion to Dismiss Plaintiffs' Amended Class Action Complaint for Injunctive and Declaratory Relief ("Motion") sidesteps the state claims and instead challenges an imaginary complaint. SNWA uses a strawman tactic to re-label Plaintiffs' state claims as federal constitutional claims, argues against that fictional federal version, and then asks the Court to dismiss Plaintiffs' state claims that SNWA never addressed.[1] Such fallacy-based re-labeling should be ignored because a plaintiff is the master of the complaint, and a defendant cannot manufacture a federal question by recharacterizing state law. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Similarly, SNWA mischaracterizes Plaintiffs' allegations, supplies its own, and relies on documents outside of the FAC. But the Court must accept the FAC's well-pleaded factual allegations (not SNWA's mischaracterizing) as true and draw every reasonable inference in Plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56

---

[1] SNWA cannot fix this tactical error on reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

(2007). That framework applies doubly to Plaintiffs' state law claims that SNWA ignores insisting they are merely shotgun claims. Detailed claims are not shotgun claims.

*SNWA's Motion Seeks Summary Judgment*. If the Court entertains the additional evidence SNWA and Plaintiffs present, the Motion must be converted to one for summary judgment and then be denied as required by FRCP 12(d)[2] to ensure the parties have sufficient opportunity to discover then debate the many genuine issues of material fact raised by Plaintiffs' FAC. Discovery has not commenced, SNWA has not carried its Rule 56 burden, and the record contains genuine disputes concerning SNWA's authority, enforcement, waiver practices, the existence and scope of Plaintiffs' ongoing injuries, and unconstitutional ambiguities around SNWA's non-functional turf definitions and application.

*SNWA's Motion Misrepresents Plaintiffs' FAC*. SNWA's Motion contains rampant mischaracterizations of Plaintiffs' FAC. Plaintiffs attach **Exhibit 1** with a detailed analysis of where SNWA's Motion misquotes, miscites, omits, or mischaracterizes the FAC and related record materials. The audit affects the Court's review under either Rule 12(b)(6) or Rule 56. Under Rule 12(b)(6). It shows that SNWA's dismissal arguments depend on non-existent allegations Plaintiffs did not plead and concessions Plaintiffs did not make.

For example, Plaintiffs "fully support thoughtful, resident-serving efforts to promote conservation," but maintain that "such initiatives must not kill trees" (ECF No. 1-2 ("FAC") at ¶ 11) or violate the Nevada Constitution. Under the stricter review standard of Rule 56, that only allows judgment if there are no disputed issues of material fact, the Exhibit identifies genuine and material disputed facts that preclude summary judgment. For example, SNWA represents to this Court that the Useless Grass Acts do not apply to single-family residential property (ECF No. 18 at 9:4-7, 15: 16-18, 20:19-25), yet SNWA has sent single-family Plaintiffs letters demanding that they remove their grass. (FAC ¶¶ 30, 289, 489.) Whether SNWA's standard means what SNWA tells courts or what SNWA tells residents is a genuine, material, and disputed fact.

---

[2] If, on a motion under Rule 12(b)(6) … matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

*SNWA's Motion to Dismiss Fails on Its Face*. The Court should not consider the Motion because the case should be remanded. However, in the event the Court considers SNWA's Motion, it still fails under Rule 12. Plaintiffs' case challenges numerous violations of Nevada constitutional principles and the widespread injury caused by SNWA's refusal to comply with the Nevada Constitution and other Nevada law. The FAC is not a shotgun pleading because it is a carefully pled class action brought by a church, homeowners, homeowners' associations, and a non-profit association of golf courses that catalogues the spectrum of harm across the valley where each count identifies the specific conduct challenged and the specific Plaintiffs SNWA is harming.

First, SNWA understands Plaintiffs' claims, which did not change much in the FAC. Three temporary restraining orders have been granted and/or stipulated to, SNWA has moved to dismiss these claims twice, and SNWA's efforts were denied each time—including the Nevada Supreme Court denying SNWA's emergency writ petition.[3] Second, on the *ultra vires* count, SNWA aims at the wrong target: it clings to a statutory label while ignoring that an interlocal water agency cannot wield police powers its member agencies never held. Third, SNWA contends the Silver State Golf Course Alliance and individual residents lack standing. But the Alliance has association standing and individual residents do have undivided property interests in common area property under NRS 116.3114 and SNWA itself cites NRS 533.025, insisting water is the property of *all* Nevadans (ECF No. 18 at 7:4-5). Therefore, each ground independently requires denial of the Motion, or at minimum leave to amend.

## II. PROCEDURAL AND FACTUAL BACKGROUND[4]

Plaintiffs Alexander Nill ("Nill"), in his individual capacity and in his capacity as managing member of Guberland LLC, Mark and Jenny-Lynne Edington (the "Edingtons"), and Kim Snyder ("Snyder") filed suit in the Eighth Judicial District Court on January 12, 2026, and they sought a temporary restraining order to save a neighborhood park. On April 21, 2026, Plaintiffs timely filed the FAC containing 25 Plaintiffs, seven causes of action, and three proposed classes.

---

[3] *See S. Nev. Water Auth. v. Dist. Ct. (Nill)*, Case No. 92378 (denying SNWA's emergency writ via order dated April 20, 2026).

[4] For the purposes of SNWA's Motion, this Court must accept the allegations in the FAC *as true*. *Iqbal*, 556 U.S. at 678.

The state court granted three temporary restraining orders ("TROs"), one of which was stipulated to by SNWA, on January 29, 2026, February 4, 2026, and February 15, 2026. (See Exhibits 4.1-4.3). SNWA filed a motion to dismiss on March 6, 2026, which was denied by the court on March 24, 2026. (Exhibit 4.4-4.5). SNWA filed an emergency writ of mandamus on March 30, 2026, which was denied by the Nevada Supreme Court on April 20, 2026. (Exhibit 4.6). Plaintiffs do not ask this Court to decide the present Motion based on those state-court rulings. The point is narrower: this case has been litigated from the outset as a Nevada-law dispute, and SNWA has long understood the Nevada state law claims it now speciously calls unintelligible (and arising under federal law).

SNWA removed the case on April 24, 2026. (ECF No. 5).

Plaintiffs' *Emergency* Motion to Remand is pending. (ECF Nos. 11, 13).

SNWA filed the present Motion to Dismiss the FAC on May 26, 2026. (ECF No. 18). By stipulation and Court order, Plaintiffs' Opposition is due June 30, 2026, and SNWA's Reply is due July 28, 2026. (ECF Nos. 22, 24).

Plaintiffs plead that SNWA, created by interlocal agreement among local water purveyors, holds enabling authority to promote "education and the conservation of groundwater," not to enforce policy. (FAC at ¶¶ 474-475). Plaintiffs allege SNWA "raise[s] its service rules to the status of law", defines and repeatedly redefines which turf is "non-functional," mandates removal, grants and denies waivers without published standards, polices neighborhoods, and threatens and penalizes residents, all "without any express grant of authority to do so." (*Id.* at ¶¶ 476, 489).

Contrary to SNWA's Motion, Plaintiffs satisfied NRS 30.130 when they served the Nevada Attorney General on February 24, 2026. (ECF No. 5-2). Removal did not undo that completed service or create a Rule 12(b)(6) defect.[5]

**A. SNWA is a creature of the Interlocal Cooperation Act, with authority to educate and coordinate, not to police or punish.**

[5] This is a red herring argument. "After removal, the federal court takes the case up where the State court left it off." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 436 (1974) (internal quotations omitted) (state court orders are preserved after removal to federal court); *Jenkins v. Commonwealth Land Title Ins. Co.*, 95 F.3d 791, 795 (9th Cir. 1996) (finding that party's request for extension to file an answer filed in state court before removal to federal court was properly before the federal court). "The federal court ... treats everything that occurred in the state court as if it had taken place in federal court." *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir.1963).

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

On July 25, 1991, seven local water and wastewater purveyors created SNWA as a political subdivision by cooperative agreement under the Interlocal Cooperation Act, NRS 277.080 to 277.180, governed by a board of member-agency representatives. (FAC at ¶¶ 354, 608). Section 14 of SNWA's enabling act gives it authority to "[d]evelop and distribute information promoting education and the conservation of groundwater," and "does not give them authority to engage in enforcement of policy." (*Id.* at ¶¶ 474-475; Ch. 572, Stats. of Nev. 1997, § 14). SNWA's "statutory function is therefore supportive and coordinative, not adjudicative or punitive," and "[n]othing in NRS Chapter 277 grants SNWA general police power, judicial authority, or the ability to unilaterally impose binding legal determinations on individual property owners." (FAC ¶ 609).

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

**B. The Useless Grass Acts do not authorize SNWA to mandate or enforce turf removal.**

In 2021 and 2023, the Legislature enacted Assembly Bill 356 and Assembly Bill 220, which Plaintiffs refer to collectively as the "Useless Grass Acts." (FAC at ¶ 6). Under the Acts, SNWA must "define" turf terms and "develop a plan to identify and facilitate" removal of non-functional turf—not enforce, fine, or mandate it. (*Id.* at ¶ 489(iii)(a); AB 356 § 39; AB 220 § 31). The Acts do not apply to single-family residences. (AB 356 § 39(1)). The Acts do not grant SNWA police power, enforcement power, or any form of punitive power.

**C. SNWA raised its service rules to the status of law and defined nearly all valley turf as illegal under a shifting, undefined standard.**

Rather than educate residents about non-functional turf, SNWA "defined nearly all grass valley wide as non-functional turf," under the Useless Grass Acts and "raised its service rules to the status of law" to claim useless grass is illegal. (FAC at ¶ 476). The Useless Grass Acts do not define "functional," "non-functional turf" or "use" (*Id.* at ¶ 520). SNWA's definition is circular: non-functional turf is defined as is "[a]n irrigated grass area ***not providing functional use***," followed by examples that "include, but are not limited to" a list including grass that no-one walks on except when mowing, picnicking or playing frisbee. (*Id*. at ¶ 396) (emphasis added) (*See "With water shortage likely, SNWA targets decorative grass"* attached as **Exhibit 2**). These definitions "are not fixed by statute, regulation, or formally adopted rule"; rather they "exist as changeable website content that may be (and has been) revised at any time *without* notice." (FAC at ¶ 10).

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

SNWA's claim that it may unilaterally define, redefine, and then enforce or waive its non-functional turf rules without published standards adds to the confusion and constitutional violations. (ECF No. 18 at 22:12-23:5). Property owners are "left guessing" what turf "is lawful to water, what grass must be removed, or how those determinations are made," because SNWA's rules are "mutable, uncodified, and inconsistently applied." (FAC at ¶¶ 519-520).

**D. SNWA polices, mandates removal, and penalizes property owners the Useless Grass Acts do not reach.**

SNWA claims powers it was never given, including the power to mandate turf removal across the Valley, "[rule] on ownership rights" over grass and trees, and "[police] the Valley, threaten[] Valley residents, and ... enforce" its interpretation of the Acts "without any express grant of authority to do so." (*Id.* at ¶ 489(i)-(iii)). SNWA's cooperative agreement "grants no police, enforcement, or punitive powers over land use or private property." (*Id.* at ¶ 489(iii)(a)).

*The Church.* SNWA classified all turf on the grounds of Plaintiff Our Lady of Victory, including grass surrounding religious statues and prayer benches where people worship, as "non-functional" based on satellite imagery alone, "rather than an in-person inspection, interviews of anyone affiliated with the Church, or any other reasonable inquiry into whether or how the Church used the grass." (*Id.* at ¶ 79). The determination gave "zero consideration" to the grass's religious function or use, such as cooling and beautifying the area around religious statues and benches, to religious ceremonies performed on the grass, or to the likelihood that removing the turf would kill the trees, including large shade trees that benefit all visitors. (*Id.* at ¶ 80).

*The single-family homeowners.* SNWA's Motion repeatedly insists "a single family home" "is plainly exempt" from the Useless Grass Acts (ECF No. 18 at 29:13-14), and their rules do not apply to "planned residential community" properties. (*Id.* at 29:17-19; 30:2-4). Thus, such individuals "suffer no deprivation" (*Id.* at 23:26-24:1). But SNWA targets single-family owners and forces them to remove their grass anyway. For example, shortly after this case was removed, SNWA sent letters to homeowners in multiple Plaintiff HOAs warning them that the grass in front of their homes on their private parcels is "non-functional" and must be removed. (*See* **Exhibits 3.1-3.4**).

SNWA's letters epitomize the violations and confusion at the heart of this case: SNWA tells the courts, including this Court, that the Useless Grass Acts do not apply to single family residential property while privately demanding that single family residents remove their grass under a shifting standard that no one can reliably follow. (FAC at ¶¶ 10, 519-520.) SNWA does all of this with no supervision or accountability.

Prior to this, the FAC alleges SNWA "visited [Plaintiff] Mr. Kelly's property on a regular basis to photograph" his remaining grass, conduct he views as "ongoing surveillance ... designed to embarrass and pressure him into removing his remaining grass," alongside excessive-use fines. (*Id.* at ¶¶ 148-153). Under "the coercive economic pressures of SNWA's enforcement program," Mr. Walker and Mr. Lee each signed a Conservation Easement and Restrictive Covenant that "runs with the land" and binds them and their successors "in perpetuity," barring reinstallation of irrigated grass absent SNWA's written consent or waiver. (*Id.* at ¶¶ 156, 161, 165). Any such waiver "is entirely contingent on SNWA's unilateral and arbitrary determinations." (*Id.* at ¶ 166). After these Plaintiffs' turf conversions, their invaluable mature trees declined and died. (*Id.* at ¶¶ 159-160, 168). Plaintiffs Walker and Lee contest the legality and propriety of SNWA's easements.

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

## III. LEGAL STANDARD

A complaint survives dismissal if its well-pleaded facts, taken as true, state a plausible claim. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56. The Court draws all reasonable inferences for Plaintiffs. *Iqbal*, 556 U.S. at 678.

SNWA repeatedly leaves that mandatory framework, disputing Plaintiffs' facts and relying on materials outside the FAC. The Court can resolve the Motion on the pleading and disregard those materials. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (cited at ECF No. 18 at 21 n.10). But, if the Court considers the declarations, exhibits, or other materials outside the pleadings submitted by either SNWA or Plaintiffs, SNWA's Rule 12(b)(6) Motion must be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

This is a dispositive standard of review change, not just a title change. Rule 12(d) expressly provides that "[a]ll parties must be given a reasonable opportunity to present all the material that is

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

pertinent to the motion." *See* Fed. R. Civ. P. 56(d). That opportunity necessarily includes a meaningful opportunity to conduct discovery *before* the Court decides disputed factual issues. The Ninth Circuit has likewise recognized that summary judgment should generally not be granted when the nonmoving party has not had a realistic opportunity to pursue discovery. *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes*, 323 F.3d 767, 773–74 (9th Cir. 2003); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001).

That is precisely the situation here. Discovery has not yet begun. The parties have not exchanged written discovery, produced documents, taken depositions, or obtained evidence that remains uniquely within SNWA's possession and control, including: (i) internal communications evaluating, questioning, or criticizing the turf-labeling policies; (ii) documents reflecting the development, formulation, and revision of the challenged turf definitions; (iii) studies, analyses, data, and communications concerning the policies' effects, including tree mortality, increased temperatures, increased evaporation, and other environmental impacts; (iv) internal memoranda assessing legal, scientific, or policy risks, including scientific disagreement regarding the challenged definitions and policies; and (v) documents concerning the standards, procedures, implementation, or absence of objective criteria governing SNWA's discretionary waiver process.

Plaintiffs have had no opportunity to present facts essential to justify their opposition, or to test SNWA's factual assertions and develop the record, as required by Rule 12(d) and Rule 56. And SNWA asks the Court to consider "Background Facts" they claim "cannot be reasonably disputed" (FAC at 18:2 n.1) without discovery. But considering SNWA's additional facts converts a Rule 12(b)(6) motion into one for summary judgment under Rule 12(d).

Moreover, once a motion is converted, genuine disputes of material fact cannot be resolved on the papers; they must be reserved for the factfinder after a full record. Plaintiffs' FAC alleges numerous material facts that SNWA disputes (or attempts to downplay with a strawman). SNWA, in turn, relies on competing factual assertions and evidence outside the pleadings that Plaintiffs contest. Those competing positions confirm the existence of genuine disputes of material fact. Because discovery has not yet begun and the record has not been developed, any converted motion for summary judgment should be denied or, at a minimum, deferred until the parties have had a full

and fair opportunity to conduct discovery and present all material pertinent to the motion, as required by Rules 12(d) and 56.

## IV. ARGUMENT

### A. The FAC gives SNWA ample notice of each claim and is not a shotgun pleading.

SNWA argues the FAC is an improper shotgun pleading under *Gibson v. City of Portland* because each count incorporates the preceding paragraphs and asks the Court to dismiss the entire pleading on that basis alone. 165 F.4th 1265 (9th Cir. 2026); (ECF No. 18 at 6, 10-11). However, *Gibson*, a case with two Plaintiffs, does not support that result and overlooks the substantive nature of this class action case.[6]

FRCP 10(c) expressly permits a complaint to incorporate allegations by reference, so incorporation by itself is not the problem. What *Gibson* condemns is the abuse of it: a complaint that "indiscriminately incorporates assertions from one count to another," leaving the defendant unable to tell which facts support which claim. *Gibson*, 165 F.4th at 1288 (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1326 (4th ed. 2024)).

The FAC does not have that defect. Each count identifies the conduct and the specific Plaintiffs it concerns. The First Cause of Action, for example, enumerates the specific *ultra vires* acts it challenges (FAC at ¶ 489(i)-(iii)); the Second Cause of Action (void for vagueness) targets SNWA's undefined and self-referential "non-functional turf" standard, which leaves owners "left guessing" what the law requires (*Id.* at ¶¶ 519-520); the Third Cause of Action (lack of due process) challenges SNWA's enforcement of that standard without the "notice and an opportunity to be heard" that due process requires (*Id.* at ¶ 527); the Fourth Cause of Action (unconstitutional as applied) challenges SNWA's standardless application of its rules to identified property, including the church grounds it labeled "non-functional" from satellite imagery and the single-family Plaintiffs' parcels (*Id.* at ¶¶ 79-80, 148-168, 575-576); the Fifth Cause of Action (unlawful

[6] If, as SNWA suggests, rote application of page and paragraph counts is the appropriate standard under *Gibson* (which it is not), then this case with 25 Plaintiffs would be entitled to more than 1,500 pages and 5,500 paragraphs. Page count is not the issue. In *Gibson,* confusion due to *indiscriminate* incorporation by reference was at issue. But proper incorporation by reference is a long-standing drafting tool designed to shorten complaints by avoiding unnecessary repetition of similar facts/details.

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

delegation) challenges the Legislature's delegation of "core legislative policy choices" to SNWA "without meaningful" standards (*Id.* at ¶ 585); the Sixth Cause of Action (consolidation of power) challenges SNWA's assumption of authority to "[d]efine regulated conduct," "[s]olely enforce its own definitions," and "judge disputes arising from its own interpretations," (*Id.* at ¶¶ 597-598); and the Seventh Cause of Action for free exercise is pleaded only as to Plaintiff Our Lady of Victory.

Each claim raises facts specific to the Plaintiff or category of Plaintiffs that give rise to the claim. Thus, the FAC is long because it is a class action with 22 Plaintiffs, which includes Plaintiff-specific facts for each Plaintiff. Its length reflects scope and clarity, not any failure of notice.

In all events, unlike the *Gibson* complaint, the FAC satisfies *Twombly* and *Iqbal* regardless of which pleading standard governs the state-law claims, because each count provides Plaintiff-specific details and claims, so the dispute over the governing standard does not affect this Motion.

Further, the record shows SNWA has sufficient notice of Plaintiffs' claims and allegations. SNWA moved to dismiss the original Complaint, which was 59 pages with more than 310 paragraphs for just three plaintiffs, and never claimed it could not understand the similar allegations. (SNWA's State-Court Motion to Dismiss, filed Feb. 24, 2026, attached as **Exhibit 9.1**; original Complaint, filed Jan. 12, 2026, attached as **Exhibit 9.2;**.) Even so, SNWA's instant oversized Motion challenges each count of the FAC and shows SNWA has no problem understanding the allegations made against it. A defendant that engages every claim in detail does not have to speculate at what the complaint alleges. Even where a Court determines that a shotgun pleading exists, *Gibson* confirms the ordinary remedy is leave to amend, not dismissal with prejudice because courts "should not hesitate to afford such parties one last opportunity" to cure. *Gibson*, 165 F.4th at 1290. Thus, SNWA's request to dismiss well-defined counts with prejudice on this ground should be denied.

**B. SNWA Does Not Carry Its Rule 12(b)(6) Burden on the Claims It Ignores or Answers Only in Federal Form.**

A party moving to dismiss under Rule 12(b)(6) bears the burden of demonstrating that the complaint fails to state a claim upon which relief can be granted as to each challenged cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). SNWA's Motion never mentions—much less analyzes—the Seventh Cause of Action for

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

free exercise of religion brought by Plaintiff Our Lady of Victory. SNWA has therefore provided the Court with no argument or authority showing that this claim fails as a matter of law when the well-pleaded allegations are accepted as true and all reasonable inferences are drawn in Plaintiffs' favor. The Seventh Cause of Action survives SNWA's Motion in its entirety. SNWA cannot cure the omission by raising the Seventh Cause of Action for the first time in its reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (district court "need not consider arguments raised for the first time in a reply brief").

SNWA's treatment of the remaining claims is also deficient. The First, Second, Fourth, Fifth, and Sixth Causes of Action are expressly pleaded under provisions of the Nevada Constitution and Nevada statutes. SNWA, however, briefs the federal constitutional and statutory analogues of these claims, without analyzing the Nevada constitutional provisions Plaintiffs actually invoke. (ECF No. 18 at 13–23). A Rule 12(b)(6) motion tests the legal sufficiency of the claims *as pleaded in the complaint*. Thus, attacking federal claims that were not pled does not discharge SNWA's burden to show that Plaintiffs' Nevada-law claims are legally insufficient. By citing no state law authority, SNWA failed to meet its Rule 12(b)(6) burden for these five causes of action.

SNWA fares no better on the Third Cause of Action for denial of due process. SNWA argues that the Third Cause of Action fails because (1) Plaintiffs Jayleen Javier ("Javier"), Ambre Hall ("Hall"), Michael Doyle ("Doyle"), Tina and Radford Smith (the "Smiths"), Joseph and Kathleen Merhar (the "Merhars"), and the Edingtons are improperly asserting property rights in the trees or water *of others*; and (2) the River Conservation Act does not apply to Plaintiffs Martin Kelly ("Kelly"), William Walker II ("Walker"), and David Lee ("Lee") because they are single family residents in planned communities, and therefore the Acts do not apply so they cannot allege any deprivation (ECF No. 18 at 23:12–30:14). However, that limited, plaintiff-specific contention supplies no basis for dismissing the Third Cause of Action as pleaded on behalf of all Plaintiffs or under the Nevada legal theories and factual allegations the Complaint invokes. The claim therefore remains intact as to every Plaintiff, every well-pleaded fact, and every Nevada authority SNWA does not address.

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

**C. SNWA attacks a phantom federal suit Plaintiffs never pled.**

In this case, Plaintiffs sufficiently pleaded causes of action arising under the Nevada Constitution and Nevada statutes. Where the FAC refers to federal law, it does so only to mark a floor that Nevada law meets and may exceed. Where federal due process sets a minimum, the Nevada Constitution provides independent and potentially greater protection. *See Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940) (state courts are "left free and unfettered" in interpreting their own constitutions). The Nevada Supreme Court has clearly explained that "we remain 'free to interpret [our] own constitutional provisions' as we see fit, regardless of any similarities between our state and federal constitutions." *Mack v. Williams*, 138 Nev. 854, 862, 522 P.3d 434, 444 (2022) (quoting *State v. Bayard*, 119 Nev. 241, 246, 71 P.3d 498, 502 (2003)). For example, Plaintiffs did not plead a Due Process violation under the Fourteenth Amendment; rather, SNWA improperly injected it to improperly remove and delay this case and avoid the state protections. (ECF No. 18 at 23).

Because Plaintiffs are masters of their complaint, SNWA cannot turn a state case into a federal one to water down or avoid the state claims by recharacterizing them as federal. *Caterpillar*, 482 U.S. at 392; *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983). The Motion challenges claims that Plaintiffs never asserted and leaves the Nevada claims untouched. Therefore, SNWA's Motion to dismiss should be denied for failure to *address* a claim.

**D. First Cause of Action: SNWA's enforcement is *ultra vires* because its member agencies do not possess enforcement or police powers.**

SNWA argues: (1) NRS 268.001, the "Dillon's Rule," reaches only incorporated cities; (2) SNWA is not a city; (3) Nevada has never applied Dillon's Rule to a special district, citing *Flores v. Las Vegas-Clark Cnty. Libr. Dist.*, 432 P.3d 173, 178 n.7 (Nev. 2018); and (4) SNWA acted within express authority under the Useless Grass Acts. (ECF No. 18 at 13-14). Each argument misses the point and, thus, fails.

Plaintiffs' first cause of action is about SNWA's unlawful enforcement of the Useless Grass Acts. Plaintiffs do not dispute that the Useless Grass Acts direct SNWA's Board to define turf terms and develop a removal plan. (FAC at ¶¶ 474, 489(iii)(a); ECF No. 18 at 8). But Plaintiffs take issue with SNWA enforcing its own non-functional turf definitions without the Legislature and Governor

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

considering or approving the definitions—or giving SNWA any enforcement power. The Useless Grass Acts do *not* authorize SNWA to (1) police the Valley, (2) demand that property owners remove turf, or (3) issue threats, tickets, or penalties against property owners "without any express grant of authority to do so" and without any due process (FAC at ¶ 489(i)-(iii)). SNWA's enabling authority is to promote "education and the conservation of groundwater"; "[i]t does not give them authority to engage in enforcement of policy." (*Id.* at ¶¶ 474-475). The Useless Grass Acts did not change the scope of that authority.

Moreover, the Interlocal Cooperation Act expressly forecloses enforcement power. SNWA is a political subdivision created by interlocal cooperative agreement under NRS 277.080 to 277.180. (*Id.* at ¶¶ 354, 608; ECF No. 18 at 14). That Act exists "to permit local governments to make the most efficient use of their powers[,]" NRS 277.090, and it lets agencies act jointly only as to "[a]ny power, privilege or authority exercised or capable of exercise by a public agency[,]" NRS 277.110(1), and contract only to perform what "any of the public agencies entering into the contract is authorized by law to perform," NRS 277.180(1). The Interlocal Cooperation Act allows the aggregation of existing powers; it does not expand or create any powers. An entity created under this same Act remains subject to legal limits on its powers. *See Clean Water Coalition v. The M Resort, LLC*, 127 Nev. 301, 308, 255 P.3d 247, 252 (2011) (addressing a political subdivision formed under NRS 277.080 to 277.180).

Plaintiffs plead this: SNWA's "enabling cooperative agreement under NRS 277.080-277.180 … grants no police, enforcement, or punitive powers over land use or private property." (FAC ¶ at 489(iii)(a)). SNWA's members are seven water and wastewater purveyors. None holds police or zoning power over land use or authority to compel a private owner to destroy landscaping (in violation of NRS 206.315 protecting trees and shrubs), so SNWA could not have acquired that power. Thus, regardless of the Dillon's Rule, SNWA's enforcement of the Useless Grass Acts is therefore *void* as beyond its lawful authority. *See Ronnow v. City of Las Vegas*, 57 Nev. 332, 65 P.2d 133, 136 (1937) ("Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts *against* the corporation, and the power is denied"; "[a]ll acts beyond the scope of the powers granted are void.") (emphasis added).

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

To be clear, aside from NRS 268.001 or the Dillon's Rule, Plaintiffs' claim can independently rest on the Interlocal Cooperation Act's limit and the traditional limited-powers rule. SNWA's "cities-only" point ignores this. The First Cause of Action's caption invokes Nevada's "Dillon's Rule," but the count pleads the limited-powers principle through the traditional rule it recites (FAC at ¶¶ 486-487 (quoting *Ronnow*)), and through the Interlocal Cooperation Act limits it alleges (*Id.* at ¶ 489(iii)(a)). In the Motion, SNWA attacks the statutory label but fails to provide any analysis regarding that independent interlocal claim.

A complaint need not invoke only one legal theory or cite only one statute; pleading laws and facts that support a claim are permitted. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). The cause of action's heading is not a basis for dismissal, and Plaintiffs need not amend to proceed. Should the Court nonetheless prefer the caption conformed to the operative allegations, leave would be freely given. Fed. R. Civ. P. 15(a)(2).

Moreover, SNWA's reliance on *Flores* is misplaced. *Flores* held that a firearm-preemption statute naming "counties, cities, and towns" did not reach a library district. *Flores*, 432 P.3d at 178. It did not hold that limited-powers principles never apply to a special district. To the contrary, the Court engaged that analysis and found the district's challenged authority came "directly from the Legislature" through its enabling statutes. *Id*. at 177-78 & n.7. That distinction defeats SNWA, not Plaintiffs: unlike the library, SNWA has no legislative grant. The Useless Grass Acts direct SNWA to define and plan to facilitate, not to police, fine, compel, or any other enforcement activity.

The *Flores* court did not dispute that the entities creating a special district "could not convey authority to the District that they lacked themselves," and it analyzed the district's powers under Dillon's Rule's "necessarily or fairly implied" standard. 432 P.3d at 177-78 & n.7; NRS 244.137(3)(b). SNWA's parenthetical, which reads *Flores* as "declining to apply Dillon's Rule," inverts that footnote.

**E. Second Cause of Action: The Useless Grass Acts are void for vagueness because the Legislature left the central term undefined and improperly delegated it.**

SNWA contends that "non-functional turf" carries a settled meaning supplied by statutory context and judicial gloss, citing *State v. Castaneda*, 126 Nev. 478, 245 P.3d 550 (2010). (ECF No.

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

18 at 16). But no statute contains the definition of non-functional turf that SNWA created. A definition the regulated authority composes for itself is entitled to none of the deference owed to statutory text, and it cannot supply the settled meaning that defeats a vagueness challenge.

A statute is void for vagueness when its terms are "vague, deceptive and uncertain," *Dunphy v. Sheehan*, 92 Nev. 259, 264(1976), or so unclear that "men of common intelligence necessarily must guess at its meaning and differ as to its application," *Id.* at 262 (citing *Connally v. Gen. Constr. Co.*, 269 U.S. 385 (1926)). A law that subjects the exercise of a right to "an unascertainable standard" cannot stand. *City of Las Vegas v. Eighth Judicial Dist. Court*, 118 Nev. 859, 865-66 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).

SNWA's main case, *Castaneda*, held that the absence of internal statutory definitions did not render Nevada's indecent-exposure statute unconstitutionally vague where both the common law and case law provided supplied settled definitions that leave "no doubt" the statute applied to the conduct at issue. 126 Nev. at 480-81. The court went on to emphasize that "[a] law which leaves the determination of what conduct is criminal to a purely subjective determination[]" is unconstitutionally vague because it fails to delineate a clear boundary between lawful and unlawful conduct. *Id*. at 481–82.

*Castaneda* further noted that the absence of an internal definition is not fatal only where a well-established settled meaning leaves no doubt as to impermissible conduct—when the courts supply that clarity. *Castaneda*, 126 Nev. at 480-482, 245 P.3d at 552-553. As *Marbury v. Madison*, states, "it is the province and duty of the judicial department to say what the law is." 5 U.S. (1 Cranch) 137, 177 (1803). SNWA therefore cannot supply settled meaning for a term the Legislature left undefined by adopting its own shifting construction of it. *Castaneda* presumes that settled meaning comes from the Legislature or the judiciary, not from the challenged agency.

Here, the void for vagueness claim survives a motion to dismiss because there is no settled meaning for the Court to supply and, as alleged in the FAC, SNWA keeps changing the definition to meet its needs. The Legislature did not define "functional" or "non-functional turf." Instead, it directed SNWA's Board to propose definitions and then never examined or approved the results via the legislative process. AB 356 § 39(2). The FAC alleges that SNWA has repeatedly changed its

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

interpretation of those terms and applied them inconsistently. (FAC at ¶¶ 519-520). And SNWA's varied enforcement efforts confirm there is no settled meaning. For example, SNWA began sending residents letters (after improperly removing this case to federal court) using new definitions that illustrate that point. *See* **Exhibit 3.1-3.4**. In those letters, SNWA first asserts that the statute does not apply to residential properties, then concludes that it does apply based solely on SNWA's interpretation of a resident's covenants, conditions, and restrictions ("CC&Rs").

In other words, the Useless Grass Acts are void for vagueness because they lack any definition of non-functional and SNWA has repeatedly changed its standards without any oversight. Therefore, SNWA's interpretation of "use," "functional," and "non-functional" shifts from one property to the next, leaving residents and users without an objective standard by which they can determine compliance. The result is an ambiguous, circular definition, under which turf is "non-functional" because it supposedly lacks a "functional" use. (FAC at ¶ 397). And SNWA's descriptions continue to shift from turf where "no one is picnicking or playing frisbee" to turf that is merely "common area for the benefit of all HOA members and guests." *See article "With water shortage likely, SNWA targets decorative grass" as* **Exhibit 2**.

A term the attempted enforcer is free to define, and revise at will, is the opposite of one fixed by settled meaning. SNWA's definition proves the point: it defines "non-functional turf" as turf "not providing functional use," then lists examples that "include, but are not limited to" a set. (FAC at ¶ 397). A definition that turns on its own negation, capped by an open-ended list, ***supplies no ascertainable standard and leaves interpretation open to SNWA's unfettered discretion***. SNWA's absurd definition could not be more subjective.

In addition, the operative terms compound the problem: "use," "functional," and "non-functional" carry no single ordinary meaning and have several reasonable interpretations, leaving compliance unknowable. The ambiguity runs across plaintiff types, from single-family properties and church grounds to HOA common areas and golf-course turf. (*Id*. at ¶¶ 79-80, 177-198, 224-237). SNWA's amorphous definitions ignore the obvious "use" and "function" of grass and has even led schools to replace sport field grass (clearly functional turf) on athletic fields with astroturf, which UNLV's Desert Research Institute warns is unsafe for summer use because it is 69 degrees hotter

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

than grass (causing temperatures as high as 169 degrees).[7] SNWA's policy endorsement of astroturf recently caused second degree burns of high school athletes' hands and feet.[8] But SNWA decided, without oversight, that real grass on athletic fields is turf "not providing any functional use." Like Plaintiffs, the burned children and their parents likely disagree.

The FAC also pleads both uncertainty and arbitrary enforcement. (FAC at ¶¶ 519-520). For example, SNWA classified grassy areas of church grounds as "non-functional" even though the grass is where congregants kneel for prayer, and celebrate Catholic holidays and services, next to religious statues and prayer benches. (*Id.* at ¶¶ 79-80). To make matters worse, SNWA used satellite imagery rather than in-person inspection to determine the church's grass was "non-functional".

And although the Useless Grass Acts do not apply to single-family residences, SNWA sends single-family residents letters implying they do absent a discretionary "waiver." (See **Exhibits 3.1-3.4**) (River Conservation Act Sec. 39(1)). Given the fact that a waiver regime exists at all confirms the line is indeterminate. Those allegations, taken as true, state a vagueness claim under Nevada law standards.

### F. Fourth Cause of Action: The as-applied claim arises under the self-executing provisions of the Nevada Constitution and is adequately pleaded.

On the as-applied count, SNWA recasts a Nevada claim as a federal equal protection claim that fails rational basis under *SmileDirectClub, LLC v. Tippins*, and contends that Plaintiffs plead no plaintiff-specific misapplication. 31 F.4th 1110 (9th Cir. 2022); (ECF No. 18 at 17-19).

---

[7] UNLV Desert Research Institute, Sept. 18, 2018, "Study Finds Artificial Turf May be Too Hot for Summer Use", available at https://www.unlv.edu/news/release/study-finds-artificial-turf-may-be-too-hot-summer-use (attached as **Exhibit 5**). *See also* "Artificial turf contains 400 chemicals tied to cancer and hormone disruption." Attached as Exhibit 5.1 Live Science by Anny Huang. *See also* Exhibit 5.2 City of Las Vegas Inches Toward Legislatively Mandated Heat Mitigation Plan, June 4, 2026, Nevada Current, by Leilah Ortega. *See also* Exhibit 5.3 "Southern Nevada faces green space loss as water-saving measures clash with tree advocates" Channel 3 News, Jane Davenport, January 22, 2026. *See also* video documenting temperature difference between grass and astroturf for Las Vegas baseball fields, provided as Exhibit 5.4.

[8] *See* Channel 13 "Family says student suffered severe burns during football practice at Spring Valley High School" (August 14, 2024), available at https://www.ktnv.com/news/family-says-student-suffered-severe-burns-during-football-practice-at-spring-valley-high-school 8 News Now (August 13, 2024), "Parents say son suffered severe burns during Las Vegas-area high school football practice" available at https://www.youtube.com/watch?v=0D4DdgJ6Fk4.

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

But this claim arises under the Nevada Constitution, Article 1, Sections 1, 2, 8, and 22. Nevada's prohibitory constitutional provisions, which limit government power, are self-executing and support a private cause of action. The Nevada Supreme Court held such in *Mack v. Williams*, reasoning that a self-executing constitutional limitation on government carries an implied right of action and that the Legislature lacks authority to curtail it. 138 Nev. 854, 522 P.3d 434 (2022). That reasoning governs the provisions Plaintiffs invoke, each of which likewise limits government power rather than merely declaring an aspiration. *Alper v. Clark County*, 93 Nev. 569, 572, 571 P.2d 810, 812 (1977); *Wren v. Dixon*, 40 Nev. 170, 161 P. 722 (1916). An administrative agency's "[o]fficial powers . . . cannot be assumed by the agency, nor can they be created by the courts in the exercise of their judicial function," and "[t]he grant of authority to the agency must be clear." *Clark County Sch. Dist. v. Clark County Classroom Teachers Ass'n*, 115 Nev. 98, 102, 977 P.2d 1008, 1010 (1999).

The claim raises a clear violation of Nevada constitutional law because the rules are unclear and inconsistently applied. Plaintiffs plead that SNWA improperly elevated its service rules to the status of law and then applied them unpredictably. SNWA has labeled grass "non-functional" without a standard, and then further distorted those rules with their absolute-discretion waiver power. In short, SNWA decides which owners must destroy their landscaping and which need not, without reliable rules. (FAC at ¶¶ 476, 489, 519-520). Then, Plaintiffs are left to guess if the law applies or not, if their trees will live or die, without any clear way to understand or appeal SNWA's decisions.

Furthermore, the FAC pleads specific applications of SNWA's overreach, alleging that the church grounds, and single-family owners were subjected to surveillance and escalating charges. (*Id.* at ¶¶ 79-80, 148-168). As such, a first-impression question of Nevada constitutional law cannot be resolved against Plaintiffs on the pleadings. Especially when SNWA *itself* disputes which standard governs. (ECF No. 11).

Additionally, SNWA's rational basis argument is both misplaced and premature. The claim is pleaded under the Nevada Constitution, not the Fourteenth Amendment. Even if rational basis review applied, a standardless waiver power that lets SNWA choose case-by-case, with no published criteria, is arbitrary in its application. *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502,

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

217 P.3d 546 (2009). Plaintiffs' allegation that they support water conservation is not a concession that a standardless, tree-killing regime is rationally related to that goal. (FAC at ¶ 11).

The deprivation of water is a deprivation of life and liberty that merits strict scrutiny. Likewise, the impairment of the free exercise of religion requires strict scrutiny. As such, even if SNWA prevails on its self-serving theory that Plaintiffs are seeking federal relief, they require strict scrutiny, not rational basis because depriving people of water is death in the desert.[9]

But even under rational basis review, a classification must bear a rational relationship to a legitimate governmental purpose, and a standardless, case-by-case waiver power supplies no such rational ground. *Heller v. Doe*, 509 U.S. 312, 320 (1993). Especially under these circumstances, there is no due process. There is no way for residents to appeal the non-functional designation, and no way to protect their property rights because SNWA insists the law does not apply to single family residents when arguing in court, then sends residents enforcement letters insisting the law does apply to their single-family residential grass.

Such irrational government hypocrisy complicates the claims and increases the need to catalogue the full spectrum of SNWA's abuse. SNWA's hypocrisy must be stopped.

**G. Fifth Cause of Action: The Useless Grass Acts unconstitutionally delegate legislative power without standards.**

In the Motion, SNWA reads the Useless Grass Acts to delegate only a permissible fact-finding role. (ECF No. 18 at 20). A delegation is unconstitutional unless the Legislature supplies suitable standards to guide and cabin against the agency's discretion. A law "must afford a person of ordinary intelligence the opportunity to know what is prohibited" and "must also provide explicit standards of application in order to avoid arbitrary and discriminatory enforcement." *Sheriff v. Luqman*, 101 Nev. 149, 153-54, 697 P.2d 107, 110-11 (1985).

As pleaded, the Useless Grass Acts fail that test. Accepting the FAC as true, SNWA is not confined to finding facts; it makes the policy. SNWA (1) defines and repeatedly revises the operative

---

[9] *See* "How many died in Las Vegas' heat …?" 527 individuals died from heat related causes in 2024 according to the Nevada Coroner. *See* https://www.reviewjournal.com/local/local-las-vegas/how-many-died-in-las-vegas-heat-during-summer-2025-a-clearer-picture-emerges-3464370/ attached as **Exhibit 6**.

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

terms "use," "functional," and "non-functional turf" or “NFT”; (2) decides which properties are exempt; (3) grants and denies waivers in its own discretion; and (4) enforces the regime it wrote, all without standards the Legislature supplied. (FAC ¶¶ 489, 519-520, 585). Defining the conduct that triggers a removal mandate, choosing who is exempt, and dispensing discretionary waivers are legislative judgments, not the "mere fact finding" *Luqman* permits. *Luqman*, 697 P.2d at 110.

The contrast with *Luqman* is dispositive at the pleading stage. There, the delegation survived because the Legislature "retained both the general and specific guidelines listing various factors" the agency had to apply, leaving it to do no more than apply legislative criteria to particular facts. (*Id.* at 110-11). Here, the FAC alleges the opposite: the Legislature supplied no definition of NFT and no standards governing exemptions, waivers, or enforcement, and instead left SNWA to write and rewrite the rule itself. (FAC ¶¶ 519-520, 585). Those are the “core legislative policy choices” the FAC alleges were delegated “without meaningful” standards. (FAC ¶ 585).

That SNWA’s appointed Board makes these choices unilaterally underscores the defect. Under the Nevada Constitution, a measure becomes law only after it passes the Legislature and is presented to the Governor. Nev. Const. art. 4, § 35. SNWA's definitions, exemptions, and waiver criteria never traversed that process; they are Board-adopted measures and shifting guidance imposed by a body the electorate cannot hold to account. A delegation that lets an unelected board both write and enforce binding rules governing private property, with no legislative standards to cabin it, is the standardless power the nondelegation doctrine forbids. *Luqman*, 697 P.2d at 110.

At the Rule 12(b)(6) stage, the Court accepts these allegations as true and draws all reasonable inferences in Plaintiffs’ favor. So accepted, the FAC states a nondelegation claim under Nevada law, and SNWA's competing “fact-finding” characterization is at most a disputed question that cannot be resolved on the pleadings.

**H. Sixth Cause of Action: SNWA combines legislative, executive, and judicial power over private land without oversight.**

SNWA denies enforcing the Useless Grass Acts. It points to a footnote that refers users to the member agencies, and it invokes *Nev. Indus. Comm’n v. Reese* and *Nevada Policy Research*

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

*Institute, Inc. v. Miller* to defend its structure. *See* 93 Nev. 115, 560 P.2d 1352 (1977); 558 P.3d 319 (Nev. 2024); (ECF No. 18 at 21-22).

However, the FAC alleges that SNWA enforces. It alleges SNWA "[p]olic[es] the Valley, threaten[s] Valley residents, and ... enforce[s]" its interpretation of the Useless Grass Acts, mandates turf removal, and binds owners through perpetual covenants it alone may waive, which the Court must accept as true at this juncture. (FAC at ¶¶ 161, 166, 489(iii)). The FAC further alleges that SNWA defines the rule, enforces it, and decides every waiver, exercising legislative, executive, and quasi-judicial power at once—all without oversight. (*Id.* at ¶¶ 596-599). The FAC alleges that SNWA patrols the Valley's streets in marked enforcement vehicles co-branded with LVVWD, issues citations and water warnings, and shames and financially penalizes residents. (*Id*. at ¶¶ 296, 300, 487, 635). These allegations are all concrete. And SNWA's letter campaign shows enforcement activities. (*See* **Exhibits 3.1-3.4**).

SNWA's authorities do not fit Plaintiffs' factual allegations or cause of action. *Reese* upheld a defined statutory scheme that incorporated the Administrative Procedure Act, with a hearing, an appeals officer, and judicial review; it does not bless a standardless combination of all three powers in a single entity that lacks enforcement authority. *Ormsby County v. Kearney*, which SNWA cites alongside *Reese*, is of the same type: it upheld a single defined office's quasi-judicial fact-finding within a bounded statutory scheme, not a standardless consolidation of all power: to legislate, enforce, and adjudicate disputes. *Ormsby County v. Kearney*, 37 Nev. 314, 142 P. 803 (1914). *Miller* addressed whether individuals serving in more than one branch violate separation of powers; it does not address a single entity that attempts to consolidate lawmaking, enforcement, and adjudication over private land. In addition, because SNWA does not address these Nevada constitutional elements, the claim should be allowed to proceed.

## V. Plaintiffs Possess Standing to Challenge SNWA's Conduct.

The case is in federal court only because SNWA improperly removed it. Plaintiffs address Article III standing here and reserve their position that the claims are Nevada-law claims that belong in state court. SNWA argues that (1) no Plaintiff pleads a cognizable property interest; (2) the Useless Grass Acts do not reach the single-family plaintiffs; (3) the Golf Alliance lacks associational

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

standing; and (4) Plaintiffs failed to serve the Attorney General. (ECF No. 18 at 10 n.4, 24, 29-30). However, each group of Plaintiffs pleads a concrete injury.

**A. The Individual Plaintiffs.**

SNWA insists the single-family residential Plaintiffs Javier, Hall, Doyle, the Smiths, and the Merhars have no right because they failed to produce a written instrument creating any property right. (ECF No. 18 at 28:6-10). But these individual plaintiffs <u>do</u> point to a written instrument: their CC&Rs. (FAC at ¶¶ 143, 334).

SNWA ignores the FAC's allegation that these individuals possess an undivided ownership interest, together with their neighbors, in the common areas within their communities per NRS 116 and those CC&Rs. (FAC at ¶117). Mr. Edington, a former biologist for the Las Vegas Valley Water District (an SNWA member agency) and now a Plaintiff, has been documenting the trees dying throughout his community, including those in the common area known as Wingbrook Park. *See* Declaration of Mark Edington, attached as **Exhibit 7** at ¶¶ 6, 10-11. His property interest arises from his undivided ownership interest in the community's common elements, as allocated under the Declaration pursuant to NRS Chapter 116, including NRS 116.2105 and NRS 116.2107.[10]

The Edington's CC&Rs explicitly identify each homeowner's "undivided property right" to the "common elements" and tie that definition to NRS 116.110318. (Edington CC&Rs 1.14 attached as **Exhibit 8**) Additionally, the preamble notes that undivided property interest cannot be divided or "separated from the lot itself," but instead any common ownership interest runs *with* the lot. (Edington CC&Rs p. 1-2, attached as **Exhibit 8**). In short, the Edingtons' CC&Rs explicitly tie their individual lot to the common elements (like Wingbrook Park) and protect them *together*. This is just one example of an individual plaintiff's right to the common areas, as each Plaintiff's CC&Rs has individual language.

Then as to those individuals that are not in HOAs, confusingly, SNWA insists that the Useless Grass Acts "do[] not apply to [Plaintiffs Kelly, Walker, and Lee] propert[ies]" because each

---

[10] *See also* photo of Canyon Gate, taken June 11, 2026, showing the removal of dead trees after removal of the grass attached as Exhibit 8.1.

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

"'owns and resides' in a 'planned residential community.'" (ECF No. 18 at 29:17-19). But SNWA's policies and representations have caused each one of these Plaintiffs injury.

For example, SNWA surveilled and photographed Mr. Kelly's property to pressure him to remove his remaining grass, impairing his use of his own parcel. (FAC ¶¶ 148-153). Why would they do this if SNWA did not believe the law applied to Mr. Kelly? Additionally, Mr. Walker and Mr. Lee converted their turf following SNWA campaigns only to have their trees die and their water bills go up. Moreover, SNWA's conversion covenants "run[] with the land" and bind Plaintiffs "in perpetuity," barring them from reinstalling grass. (*Id.* at ¶¶ 156-157, 161, 164-166). Plaintiffs challenge the validity of those easements. The partial rebate SNWA offered does not excuse SNWA's misrepresentation of the law, cover their costs, or cure unlawful conduct, coercion, or the perpetual restriction. (*Id.* at ¶¶ 157, 165). These individuals' standing rests on each Plaintiff's parcel (including any common-area rights) and SNWA's conduct toward it.

**B. Our Lady of Victory Catholic Church.**

The church pleads injury to its property and government infringement on its right to free religious exercise, the subject of the Seventh Cause of Action that SNWA does not address. As pled at length, the church's grass is used for religious purposes making it clearly "useful" or "functional" turf. (FAC at ¶¶ 47-51). Regardless, SNWA cannot make definitions that impinge on the church's religious liberties guaranteed by the Nevada Constitution's free exercise clause.

**C. The Silver State Golf Industry Alliance.**

The Silver State Golf Industry Alliance (the "Alliance") is a Nevada nonprofit organization whose mission is to provide a unified voice for the future of golf in Nevada, and whose members include golf course owners and operators, allied associations, and golf-related businesses across the State, including the Las Vegas Valley. (FAC at ¶ 224). The Alliance represents approximately eighty-one golf courses, from boutique facilities to large resort and community-amenity courses, many located within or adjacent to residential communities that rely on the courses as green space and recreational amenities. (FAC at ¶ 225). Those member courses are direct targets of SNWA's program: each maintains irrigated turf that SNWA labels "non-functional," and each faces the loss of turf, mature trees, and water that this suit seeks to prevent. (FAC at ¶¶ 224–244).

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

The Alliance has associational standing to bring the facial counts (the First, Second, Fifth, and Sixth Causes of Action), which challenge the validity of the Useless Grass Acts and seek only declaratory and injunctive relief. An association has standing to sue on its members' behalf when (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also UAW v. Brock*, 477 U.S. 274, 281-90 (1986) (reaffirming the *Hunt* test and holding that an association may litigate on its members' behalf for declaratory and injunctive relief without their individual participation); *Warth v. Seldin*, 422 U.S. 490, 511, 515-16 (1975).

Each element is satisfied. The Alliance's member courses have standing because SNWA's definitions govern their turf, water use, and course operations. Protecting those interests is central to the Alliance's purpose. And the facial claims challenge SNWA's authority as a matter of law, not facts unique to any one course. Any course-specific variation affects the scope of relief, not the Alliance's standing to litigate the validity of SNWA's regime.

Direct standing exists as well. Spanish Trail Country Club is a Plaintiff that owns and operates a golf course established in 1984, with approximately 178 acres of irrigated turf and roughly 950 mature trees used by approximately 1,235 member households and their guests. Dozens of mature trees have already died and been removed following turf conversions. (FAC ¶¶ 252-254). Sun City Summerlin Community Association, also a Plaintiff, owns and operates three courses (Palm Valley, Highland Falls, and Eagle Crest) for its members' use. (FAC ¶¶ 210-211). To the extent any count turns on course-specific application, Spanish Trail supplies standing directly because it owns its courses outright. (FAC at ¶¶ 239-254).

## VI. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PLAINTIFFS LEAVE TO AMEND

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

If the Court grants any part of the Motion, it should grant leave to amend. Rule 15(a)(2) directs courts to "freely give leave when justice so requires," a policy the Ninth Circuit applies "with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Dismissal with prejudice is inappropriate unless it is clear the complaint "could not be saved by amendment." *Id.* at 1052. Even SNWA's own authority confirms that dismissal for a pleading defect is discretionary, and courts typically allow the plaintiff to replead rather than dismiss with prejudice. *Gibson*, 165 F.4th at 1290. But leave to amend will give SNWA what it wants: delay to keep removing grass. So Plaintiffs plead the Court to deny the Motion to Dismiss.

## VII. CONCLUSION

Plaintiffs filed this Nevada constitutional case, and SNWA's Motion to Dismiss does not address state law claims. The Motion attacks federal claims Plaintiffs never brought, disputes well-pleaded factual allegations the Court must accept as true, and leaves Plaintiffs' Nevada state law claims untouched. Under the circumstances, the Court should remand this case to state court where it belongs. Absent that result, the Court should deny the Motion. If the Court determines any aspect of Plaintiffs' FAC fails to state a claim, the Court should grant Plaintiffs leave to amend.

DATED: June 30th, 2026.

**LEX TECNICA**

*/s/ Samuel D. Castor*
SAMUEL CASTOR, ESQ. (#11532)
SCOTT WHITWORTH, ESQ. (#15671)
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145

MICHAEL GAYAN, ESQ. (#11135)
KATRINA STARK, ESQ. (#16006)
**CLAGGETT & SYKES TRIAL LAWYERS**
1160 N. Town Center Drive, Suite 200
Las Vegas, NV 89144

*Attorneys for Plaintiffs and putative class*

LEX TECNICA
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
(725) 239-8413

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I hereby certify that on this 30th day of June, 2026, I caused to be served a true copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT SOUTHERN NEVADA WATER AUTHORITY'S MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF (ECF NO. 18)** as follows:

☐ **U.S. Mail:** By depositing a true and correct copy of said document(s) via U.S. mail, with postage pre-paid and addressed as listed below.

☐ **Hand Delivery:** I caused said document(s) to be delivered to the address(es) list below;

☐ **Electronic Mail:** I caused said document(s) to be delivered by emailing an attached Adobe Acrobat PDF of the document to the email address(es) identified above.

☒ **Electronic Service:** I caused said document to be delivered by electronic means upon all eligible electronic recipients via the United States District Court CM/ECF system or Clark County District Court E-Filing system (Odyssey).

OLIVER J. PANCHERI, ESQ. (NBN #7476)
JESSICA M. LUJAN, ESQ. (NBN #14913)
ELLSIE E. LUCERO, ESQ. (NBN #15272)
SPENCER FANE LLP
300 S. 4th Street, Suite 1600
Las Vegas, Nevada 89101
opancheri@spencerfane.com
jlujan@spencerfane.com
elucero@spencerfane.com
*Attorneys for Defendant*

WILL KEMP, ESQ. (NBN #1205)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
c.pola@kempjones.com
*Attorney for Defendant*

CHAD R. FEARS, ESQ. (NBN #6970)
JEFFREY F. BARR, ESQ. (NBN #7269)
BRENNEN D. MARSHALL (NBN #16578)
EVANS FEARS SCHUTTERT MCNULTY MICKUS
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119
cfears@efsmmlaw.com
jbarr@efsmmlaw.com
bmarshall@efsmmlaw.com
*Attorneys for Defendant*

/s/ *Angeli Gozon*
An Employee of LEX TECNICA