NICHOLAS J. SANTORO, ESQ. (SBN 535)
OLIVER J. PANCHERI, ESQ. (NBN 7476)
JESSICA M. LUJAN, ESQ. (NBN 14913)
ELLSIE E. LUCERO, ESQ. (NBN 15272)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400 / Fax: (702) 408-3401
Email: nsantoro@spencerfane.com
opancheri@spencerfane.com
jlujan@spencerfane.com
elucero@spencerfane.com

CHAD R. FEARS, ESQ. (NBN 6970)
JEFFREY F. BARR, ESQ. (NBN 7269)
**EVANS FEARS SCHUTTERT MCNULTY MICKUS**
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119
702-805-0290
Email: cfears@efsmmlaw.com
jbarr@efsmmlaw.com
bmarshall@efsmmlaw.com

WILL KEMP, ESQ. (NBN 1205)
**KEMP JONES, LLP**
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Tel.: (702) 385-6000 / Fax: (702) 385-6001
Email: c.pola@kempjones.com

*Attorneys for Defendant*
*Southern Nevada Water Authority*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

OUR LADY OF VICTORY CATHOLIC CHURCH (AKA SOCIETY OF ST. PIUS X, LAS VEGAS NEVADA, INC.); ALEXANDER NILL, individually and as a managing member of GUBERLAND, LLC; MARK and JENNY-LYNNE EDINGTON; MARTIN KELLY; WILLIAM WALKER II; DAVID LEE; JAYLEEN JAVIER; AMBRE HALL; MICHAEL DOYLE; TINA and RADFORD SMITH; JOSEPH and KATHLEEN MERHAR; STACY STANDLEY, each individually; SUN CITY SUMMERLIN COMMUNITY ASSOCIATION, INC.; THE VINEYWARDS COMMUNITY ASSOCIATION; SILVER STATE GOLF INDUSTRY ALLIANCE (non-profit); SPANISH TRAIL MASTER ASSOCIATION; THE CARMELS AT SPANISH TRAIL ASSOCIATION; GARDENS AT SPANISH TRAIL ASSOCIATION; INNISBROOK ESTATES AT SPANISH TRAIL ASSOCIATION; ISLANDS AT SPANISH TRAIL ASSOCIATION; THE LINKS AT SPANISH TRAIL ASSOCIATION; and SPANISH TRAIL COUNTRY CLUB, on behalf of themselves and all others similarly situated;

**Case No.: 2:26-cv-01291-GMN-NJK**

**DEFENDANT SOUTHERN NEVADA WATER AUTHORITY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF (ECF No. 18)**

**ORAL ARGUMENT REQUESTED**

Plaintiffs,

v.

SOUTHERN NEVADA WATER AUTHORITY, a Political Subdivision of the State of Nevada; DOE INDIVIDUALS; and ROE GOVERNMENTAL ENTITIES,

Defendant(s).

Defendant Southern Nevada Water Authority ("SNWA") files its Reply in Support of Motion to Dismiss Plaintiffs' Amended Class Action Complaint for Injunctive and Declaratory Relief (the "FAC") (ECF No. 18).

# TABLE OF CONTENTS


**I. INTRODUCTION** .......... 1

**II. ARGUMENT** .......... 1

A. Plaintiffs Fundamentally Mischaracterize Allocation of Colorado River Water and SNWA's Role .......... 1

B. The Response Confirms the FAC Is a Shotgun Pleading .......... 4

C. Plaintiffs' Rule 12(d) Argument Fails .......... 6

D. The Ultra Vires/Dillon's Rule Claim Still Fails .......... 6

E. The Void for Vagueness Claim Still Fails .......... 7

F. The As-Applied Challenge Still Fails .......... 9

G. The Improper Delegation Violation Still Fails .......... 10

I. The Separation of Powers Claim Still Fails .......... 12

J. The Due Process Claims Fail as to the Individuals .......... 13

K. Silver State Golf Industry Alliance Still Lacks Standing .......... 14

L. Referring to the Seventh Claim Does Not Save the FAC .......... 15

M. Leave to Amend Does Not Justify Denying the Motion .......... 15

**III. CONCLUSION** .......... 15

# TABLE OF AUTHORITIES

**Cases**


*Arizona v. California*, 373 U.S. 546 (1963) ....................2

*Bauer v. Shepard*, 620 F.3d 704 (7th Cir. 2010)....................7

*Bergman v. Kearney*, 241 F. 884 (D. Nev. 1917) ....................13

*California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142 (1935) ....................2

*Carrigan v. Comm'n on Ethics of State*, 129 Nev. 894, 313 P.3d 880 (2013)....................7

*Flores v. Las Vegas-Clark County Library District*, 432 P.3d 173 (Nev. 2018)....................6

*Floyd v. Department of Corrections*, 536 P.3d 445 (Nev. 2023) ....................10, 11

*Gibson v. City of Portland*, 165 F.4th 1265 (9th Cir. 2026) ....................4, 5

*Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. 2011) ....................9

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) ....................14, 15

*Loughrin v. United States*, 573 U.S. 351 (2014) ....................11

*Ormsby County v. Kearney*, 142 P. 803 (Nev. 1914)....................12

*Ronnow v. City of Las Vegas*, 65 P.2d 133 (Nev. 1937) ....................6

*Sheriff, Clark County v. Luqman*, 697 P.2d 107 (Nev. 1985) ....................10

*State v. Castaneda*, 245 P.3d 550 (Nev. 2010) ....................8

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544 (1996) ....................14

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ....................6

*WAIT Radio v. F.C.C.*, 418 F.2d 1153 (D.C. Cir. 1969)....................11

*Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56 (9th Cir. 1994) ....................13

*Willson v. First Judicial District Court*, 547 P.3d 122 (Nev. App. 2024) ....................9

**Statutes and Rules**


Article III ........ 15

Article 3 of the Nevada Constitution ........ 13

Boulder Canyon Project Act, ch. 42, 45 Stat. 1057 (1928) ........ 2

Colorado River Compact (1922) ........ 2

Conservation of Colorado River Water Act, 2021 Nev. Stat. 364 ........ 2, 3, 7, 8, 14

Desert Land Act of 1877, ch. 107, 19 Stat. 377 ........ 2

Fed. R. Civ. P. 10(b) ........ 5

Fed. R. Civ. P. 12(b)(6) ........ 6

Fed. R. Civ. P. 12(d) ........ 6

Fed. R. Evid. 201(b), (c) ........ 3

NRS Chapter 116 ........ 14

NRS Chapter 241 ........ 7

NRS Chapter 540 ........ 7, 11, 12

NRS 116.3102 ........ 14

NRS 116.330 ........ 14

NRS 268.001 ........ 7

NRS 268.003 ........ 7

NRS 268.0035 ........ 7

NRS 268.411 ........ 3

NRS 277.060 ........ 2

NRS 277.080 et seq. ........ 7

NRS 278.020 ........ 7

NRS 533.025 ........ 13

NRS 540.151 ........ 14

1947 Nev. Stat. 167 ........ 7, 12

1995 Nev. Stat. 393 ........ 2

**Municipal Codes and Other Authorities**

Boulder City Municipal Code Sec. 9-14-3(A)(5) .................................................3, 12

Henderson Municipal Code Sec. 14.14.050(B) .....................................................3, 12

North Las Vegas Municipal Code Sec. 13.08.060(E) ..........................................3, 12

NTRAC Recommendations Report..................................................................................3

Southern Nevada Water Authority, Understand Laws and Ordinances.......................................7

## I. INTRODUCTION

The Conservation of Colorado River Water Act (the "River Conservation Act" or the "Act") is the product of years of a public, deliberative process of the Nevada Legislature, local governments, expert hydrologists and climatologists, and ordinary citizens who have been forced to make hard policy choices to manage Southern Nevada's dwindling water resources.

Plaintiffs now demand that this Court hurriedly undo years of deliberation because they do not like those hard policy choices. But Plaintiffs' proclivities do not make an "emergency" constitutional crisis. Behind the Dr. Seuss quotes, the inflammatory rhetoric, and lack of any cognizable legal theory, the FAC is incoherent sophistry. Plaintiffs' Response only confirms its incoherence and does nothing to explain or defend the FAC's procedural or substantive derelictions.

Procedurally, the FAC remains a shotgun pleading, indiscriminately incorporating all prior allegations into a 114-page, 646-paragraph behemoth. Plaintiffs' nearly 500-page evidentiary exhibit confirms the FAC's legal deficiencies.

Substantively, nothing in the Response changes the fact that their First, Second, Fourth, Fifth, and Sixth Causes of Action fail globally as a matter of law. These causes of action possess no cognizable legal claim. In addition, certain individual Plaintiffs cannot maintain the Fourth Cause of Action as a matter of law, and Plaintiff Silver State Golf Industry Alliance has no associational standing.

The Response changes none of these conclusions, and the Court should dismiss this Action in its entirety.

## II. ARGUMENT[1]

### A. PLAINTIFFS FUNDAMENTALLY MISCHARACTERIZE ALLOCATION OF COLORADO RIVER WATER AND SNWA'S ROLE

At the root of this entire action, Plaintiffs distort SNWA's role in managing the allocation of Colorado River water. The FAC accosts the reader with stream of consciousness and unreliable narrators conflating and distorting SNWA's legislative mandate. The actual legal framework

---

[1] Plaintiffs' "Remand First" argument sidesteps the Motion; a pending motion to remand does not relieve Plaintiffs of their burden to show that the FAC states legally cognizable claims.

shows how ill-fated this suit is, with Plaintiffs' distortions accounting for the procedural and substantive defects underlying it. The following discussion is intended to ameliorate the confusion that Plaintiffs have attempted to create.

***The Colorado River Compact***

The Colorado River Compact is a congressionally approved interstate compact with the force of federal law, allocating a portion of the water to the state of Nevada. *See* Colorado River Compact, Nov. 24, 1922, *approved by* Boulder Canyon Project Act, ch. 42, § 13(a), 45 Stat. 1057, 1064-65 (1928); *see also*, *Arizona v. California*, 373 U.S. 546, 551 (1963) (recognizing the apportionment of consumptive use of Colorado River water).

Nevada's authority to allocate its share of water arises from its sovereign authority over water resources and from state statutes enacted pursuant to that authority. *See California Oregon Power Co. v. Beaver Portland Cement Co*., 295 U.S. 142, 163-64 (1935).

***SNWA's Role in Managing Colorado River Water***

Nevada has delegated authority to manage Colorado River Water to the Southern Nevada Water Authority. *See* 1995 Stat. Nev. 393, Sec. 2. SNWA coordinates "water management and conservation" among the interlocal agreement's signatories so that these purveyor members "act in a unified and cooperative manner with respect to Colorado River problems…." (the "Interlocal Agreement," ECF No. 18-3, Recitals B and E.); *e.g.*, NRS 277.060. Simply put, SNWA receives and manages the State's allocation of Colorado River water and, in turn, distributes that water to its purveyor members (the Las Vegas Valley Water District, Henderson, North Las Vegas, and Boulder City, and Big Bend Water District), who, in turn, distribute it to water customers, among whom are the Plaintiffs.

The Nevada Legislature passed and amended the "Conservation of Colorado River Water Act," which prohibits Colorado River water from irrigating nonfunctional turf: "Except as otherwise provided in this section, on and after January 1, 2027, the waters of the Colorado River distributed by the Southern Nevada Water Authority or one of the member agencies of the Southern Nevada Water Authority may not be used to irrigate nonfunctional turf on any parcel of property that is not used exclusively as a single-family residence." River Conservation Act, Sec. 39(1). The

Act was the product of years of deliberation to carefully enact and pursue water conservation. The law is solely directed at irrigation of nonfunctional turf.

The Legislature recognized the potential practical burdens of this statutory prohibition and directed the creation of a Nonfunctional Turf Removal Advisory Committee ("NTRAC"), comprised of nine voting members representing a variety of community stakeholders such as HOAs, local government, businesses, and golf courses. *See* River Conservation Act, Sec. 40. The Act directed NTRAC to meet and create recommendations for the SNWA Board of Directors related to nonfunctional turf issues. *See* River Conservation Act, Sec. 41. As directed by the Legislature, NTRAC conducted four public meetings with public comments and formulated recommendations for the SNWA Board of Directors for defining functional turf, Nonfunctional turf and a process of waivers and appeals for those designations.[2]

SNWA's Board of Directors subsequently adopted NTRAC's recommendations pursuant to the authority provided under the Act for SNWA's Board of Directors to "[d]efine 'functional turf' and 'non-functional turf'" to implement the prohibition; to "[d]evelop a plan to identify and facilitate the removal of existing nonfunctional turf" for those customers desiring so; and to grant waivers from the prohibition or the plan. *See* River Conservation Act, Sec. 39(2)(a), 39(2)(b), and 39(3).

The member agencies of the SNWA will enforce the Act's prohibition. Section 39(1) is a prohibition of general applicability, and the purveyor members will enforce it under their general police powers pursuant to NRS 268.411 (and other statutes) and their respective charters. *See e.g.*, Henderson Muni. Code Sec. 14.14.050(B); North Las Vegas Muni. Code Sec. 13.08.060(E); Boulder City Muni. Code Sec. 9-14-3(A)(5). Contrary to Plaintiffs' conclusory labels, SNWA does not enforce the prohibition.

The Legislature's directive fits precisely with SNWA's inter-jurisdictional coordination and conservation functions under both the Interlocal Agreement and its enabling act. Put simply,

---

[2] *See* NTRAC Recommendations Report included with this Reply as Exhibit A. Under FRE 201(b) and (c), SNWA respectfully requests the Court to take judicial notice of the Recommendations Report, Nevada statutes, and municipal ordinances referred to herein because they are matters of public law whose accuracy cannot be reasonably questioned.

SNWA uniformly defines and identifies nonfunctional turf and grants waivers/appeals so that its purveyor members may enforce the Act's prohibition.[3] The statutory regime functions exactly as the Legislature requires within constitutional spheres of the respective Southern Nevada jurisdictions.

Plaintiffs' Response conspicuously ignores the thoughtful and deliberate measures taken by the Nevada Legislature to protect Southern Nevada's most precious natural resource in a time of water crisis. Plaintiffs further conflate and mischaracterize SNWA's role in implementing the Act in an effort to manufacture a constitutional attack that has no basis in the law.

**B. THE RESPONSE CONFIRMS THE FAC IS A SHOTGUN PLEADING**

The distortion begins with the FAC. At 114-pages and 646-paragraphs, it remains the epitome of a shotgun pleading. *See Gibson v. City of Portland*, 165 F.4th 1265, 1287 (9th Cir. 2026). And nothing in the Response cures this. This defect, alone, is enough to dismiss the FAC.

The *Gibson* Court had no compunction striking a complex, constitutional complaint for violating Rule 8's prohibition against shotgun pleadings. *See id*. at 1271-72. Hallmarks of a shotgun pleading include (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint" and (2) "a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action…." *Id*. at 1288. Plaintiffs baldly deny doing exactly what *Gibson* prohibits. (ECF No. 25 at 11:10-15.) The FAC tells a different story. First, Plaintiffs "incorporate by reference all preceding paragraphs and allegations as though fully set forth herein" after 84 pages of 472 preceding paragraphs. FAC ¶¶ 473, 508, 526, 569, 580, and

---

[3] After NTRAC issued its Recommendations Report, the Nevada Legislature amended the River Conservation Act to further clarify that the property being used "exclusively as a single family residence" and to give the SNWA General Manager, or his or her designee, the authority to approve waivers of Nonfunctional turf designations. Importantly, the 2023 amendment took place **after** NTRAC's recommendations for and the SNWA Board's adoption of the definition of "Nonfunctional turf" and, importantly, the Nevada Legislature did not amend or limit NTRAC's role in defining "Nonfunctional turf," nor did it see fit to revise the definition recommended by NTRAC.

588. This indiscriminate incorporation by reference prejudices SNWA because it prevents SNWA from knowing what facts Plaintiffs rely upon as the basis for their claims.

Regarding the second category, the FAC is replete with allegations that are inflammatory rather than factual and/or irrelevant to the claims at issue. For example, the FAC discusses SNWA's unrelated activities to negotiate a new Colorado River water regime with the Basin States and various marketing expenditures, which have no bearing on the claims presented.[4] The FAC casts conclusory, subjective aspersions that SNWA has acted unconstitutionally without reference to corresponding objective facts.[5] And the FAC describes voluntary actions undertaken by Plaintiffs' HOAs that are not parties to the case.[6] These confusing allegations fail to clearly identify the basis for Plaintiffs' claims. This will force the Court and SNWA to guess as to which facts support which claim and ultimately waste judicial resources in overseeing this litigation.

Plaintiffs also assert Rule 10(b), claiming that if they were to follow Rule 8 and *Gibson* their complaint would be a 1,500-page, 5,500 paragraph tome. (ECF No. 25 at fn. 6.) Self-proclaimed complexity and prolixity does not excuse Rule 8 defects; rather, the clarity and precision of Rule 8's requirements are even more compelling.[7] Indeed, the *Gibson* Court anticipated and rejected Plaintiffs' Rule 10(b) objection, holding that the Ninth Circuit "would not quarrel with the instant complaint if it incorporated by reference *specific* paragraphs of facts into *specific* claims for relief. If the complaint did that, we would be able to understand who took what actions." *Id*. (emphasis in original). Like the plaintiff in *Gibson*, Plaintiffs chose indiscriminate incorporation. Like *Gibson*, this Court should give their Rule 10(b) argument no weight.

The FAC is a shotgun pleading that violates Rule 8. The Court should dismiss the FAC for this reason alone.

---

[4] *See, e.g.,* FAC at ¶¶ 13-18, 27-29, 246, 279, 332, 478.

[5] *See, e.g., id*. at ¶¶ 3, 31, 39, 40, 228, 255, 298, 301, 343, 559, 566, 568.

[6] *See, e.g., id*. at ¶¶ 102, 104, 115, 118-120, 123, 126, 184, 190, 219, 234, 236, 240, 245, 246, 251, 254.

[7] *E.g.*, "This case presents complex questions of fact and law. Those questions are made all the more complicated by Plaintiffs' shotgun pleading." *Gibson v. City of Portland*, 165 F.4th 1265, 1271 (9th Cir. 2026).

### C. PLAINTIFFS' RULE 12(d) ARGUMENT FAILS

Plaintiffs demand that the Court convert SNWA's Motion to Dismiss (ECF No. 18) to a motion for summary judgment. (ECF No. 25 at 9:28-11:2). But SNWA properly relied on the FAC, judicially noticeable statutes, and documents incorporated by reference on a Rule 12(b)(6) motion. *See e.g.*, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (holding that court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment").

Here, Plaintiffs cannot force a Rule 12(d) conversion by submitting an overwhelming 500-page evidentiary appendix and then claim that disputed facts preclude dismissal. This extra-record evidence confirms that Plaintiffs' FAC is legally deficient; if the allegations in the FAC were sufficient, Plaintiffs would have no reason to add nearly 500 pages of evidence. Simply put, the Court need only review the FAC, the judicially noticeable statutes, and the documents incorporated by reference to determine that the FAC fails to state a legally cognizable claim.

In sum, the legal defects of the FAC can be easily resolved on the pleadings. The Court should ignore Plaintiffs' demand to convert the instant Motion into one for summary judgment.

### D. THE ULTRA VIRES/DILLON'S RULE CLAIM STILL FAILS

Plaintiffs' dependence on *Ronnow* is likewise misplaced. *Ronnow* stands for the uncontroversial and inapposite proposition that a city may not exercise broad, implied powers. *See Ronnow v. Las Vegas*, 65 P.2d 133, 136 (Nev. 1937). But *Ronnow* does not apply, here, because SNWA relies on express statutory text, not broad, implied powers setting aside that SNWA is not a city.

Similarly, *Flores* does not support Plaintiffs' position. *Flores* declined to apply Dillon's Rule to a special district where the district's authority flowed from its enabling statute. *Flores v. Las Vegas-Clark Cnty. Libr. Dist.*, 432 P.3d 173, 178 n.7 (Nev. 2018). *Flores* does not delete SNWA's express authority under the Cooperative Agreement, NRS ch. 540, and the River Conservation Act.

Stripped of rhetoric, the First Cause of Action depends on a chain of incoherent premises: NRS 268.001 supposedly applies to an entity that is not a city; the Act supposedly gives SNWA no authority while expressly directing SNWA to define turf and develop the plan Plaintiffs attack; and NRS 277.080 et seq. supposedly confines SNWA to mere education despite the express mandates of the River Conservation Act and NRS ch. 540. Stacking these contradictions does not make the Dillon's Rule claim viable.[8] The Court should dismiss the First Cause of Action.

## E. THE VOID FOR VAGUENESS CLAIM STILL FAILS

Plaintiffs' void-for-vagueness claim fails because Plaintiffs refuse to read the statute's words in context. Plaintiffs repeatedly insist that property owners are "left guessing" what the Act requires because the statute uses the terms "functional turf" and "nonfunctional turf." (ECF No. 25 at 16-19.) But the Act's operative prohibition is unambiguous.

The language identifies the water source, the distributor, the prohibited use, the covered property, and the effective date. It also directs SNWA's Board to define "functional turf" and "nonfunctional turf" for purposes of that prohibition based on recommendations from NTRAC after public meetings and comment.[9] River Conservation Act, Sec. 39(2)(a), 40, and 41. Those definitions are readily available on SNWA's website, abating the need for guesswork.[10] This is ordinary statutory implementation, not vagueness. "When a statute is accompanied by an administrative system that can flesh out details, the due process clause permits those details to be left to that system." *Carrigan v. Comm'n on Ethics of State*, 129 Nev. 894, 902, 313 P.3d 880, 886 (2013) (*quoting Bauer v. Shepard,* 620 F.3d 704, 716 (7th Cir.2010).

Plaintiffs' argument depends on pretending that the Legislature had to place every technical definition inside the statute, but Nevada law says otherwise. "The lack of internal definitions does

---

[8] Plaintiffs' rhetoric that none of SNWA's purveyor members holds "police or zoning power" is pure fiction. (ECF No. 25 at 15:21-22.) By virtue of their respective charters, NRS 268.003, NRS 268.0035, and NRS 278.020, purveyor members, Boulder City, Henderson, and North Las Vegas, unquestionably hold police or zoning powers—as do other signatories to the Interlocal Agreement, Las Vegas and Clark County. By virtue of its enabling act, the Las Vegas Valley Water District also holds limited police power. *See* 1947 Nev. Stat. 167, Sec. 9.5.

[9] NRS ch. 241 required NTRAC to comply with the Open Meeting Law's requirements.

[10] Southern Nevada Water Authority, *Understand Laws and Ordinances*, last accessed July 1, 2026, https://www.snwa.com/conservation/understand-laws-ordinances/index.html.

not invalidate the statute." *State v. Castaneda*, 245 P.3d 550, 552-53 (Nev. 2010). Courts look to statutory context, ordinary meaning, settled usage, and implementing provisions. *See id*.

*Castaneda* does not help Plaintiffs because the Nevada Supreme Court rejected a vagueness challenge even though the statute did not define the challenged phrase internally. *See id*. The principle applies here with more force because the Act itself supplies the definitional mechanism. It instructs SNWA's Board to define the relevant turf categories. Plaintiffs try to turn that express definitional mechanism into a vagueness defect. (ECF No. 25 at 16-19.) Plaintiffs may not like SNWA's definitions, but disagreement with an implementing definition is not a facial vagueness claim.

Plaintiffs also plead no facts showing that the Act is vague in all or even most applications. The Act plainly applies to parcels using Colorado River water to irrigate nonfunctional turf and exempts parcels "used exclusively as a single-family residence." River Conservation Act, Sec. 39(1). Plaintiffs instead point to edge disputes, common-area disputes, waiver disputes, and disagreements about whether particular turf has a function (without reference to the established definitions of functional- and nonfunctional turf). But a statute is not facially void because some applications require factual judgment. Simply stated, Plaintiffs' own allegations confirm that their dispute is with classification and application, not notice or authority.

Plaintiffs' reliance on alleged "shifting" website content does not save the claim. (ECF No. 25 at 7-8, 16-19.) The relevant question is whether the statute provides fair notice and adequate standards, not whether Plaintiffs approve of every public-facing explanation. Plaintiffs attempt to manufacture vagueness by selecting snippets from public guidance and recasting them as the statute itself. Likewise, Plaintiffs' single-family residence allegations and church allegations are application disputes, not vagueness claims. Plaintiffs allege SNWA sent communications concerning turf associated with planned communities, common areas, or parcels Plaintiffs characterize as residential. (ECF No. 25 at 4, 8-9, 18-19.) At most, that raises questions about whether particular turf is on a covered parcel, belongs to an HOA common area, is supplied through a covered distributor, or should receive a waiver. It does not render the statutory standard void on its face or give rise to a constitutional violation.

Moreover, the existence of a waiver process does not prove vagueness. (ECF No. 25 at 18-19.) Waivers are common in regulatory schemes. They exist because statutes often apply to varied facts and because the Legislature may choose to permit relief in appropriate circumstances. A waiver process demonstrates administrative flexibility, not unconstitutional vagueness. Plaintiffs' invocation of "arbitrary enforcement" is equally conclusory. They merely allege classifications and waiver decisions they dislike, not that the Act encourages arbitrary or discriminatory enforcement in the constitutional sense.

None of Plaintiffs' allegations state a global void-for-vagueness claim. The Second Cause of Action should be dismissed.

**F. THE AS-APPLIED CHALLENGE STILL FAILS**

Plaintiffs' Fourth Cause of Action misunderstands the nature of an as-applied challenge and the operative effect of the Act.

An as-applied challenge must identify a discrete subrule or application of a law to a particular factual circumstance and explain why that application is unconstitutional even if other applications would be valid. *See Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011); *see also*, *Willson v. First Jud. Dist. Ct. in & for Cnty. of Carson City*, 547 P.3d 122, 137 (Nev. App. 2024).

Plaintiffs' theory attacks SNWA's alleged interpretation, implementation, waiver practices, turf classifications, fictional enforcement posture, and valley-wide effects all at once. Plaintiffs make one argument that the rules are "inconsistently applied," yet fail to explain how those "rules" are applied differently to Plaintiffs than to similarly situated non-parties. With generalized allegations about "deprivation of water" and "single family residents," they torpedo their own claim by emphasizing the alleged "valley-wide" effect of the statute rather than identifying a particular application that makes an otherwise constitutional statute unconstitutional.

Invoking the Nevada Constitution does not cure the incoherence. Plaintiffs fail to plead facts showing how a particular application violated a cognizable constitutional right. Simply asserting that SNWA's conduct is "standardless" and therefore unconstitutional is conclusory labeling, not as-applied jurisprudence. (*E.g.*, ECF 25 at 20-21.)

Strict scrutiny does not save the claim either. The Act regulates the use of Colorado River water. It does not deprive Plaintiffs of trees or turf. Restricting outdoor irrigation does not deprive a person of a fundamental right. Rational basis review thus applies, and Plaintiffs plead no contrariwise facts. While it appears obvious, water conservation in the desert is a legitimate governmental objective; indeed, Plaintiffs concede it is critical. Their policy disagreement does not render the Act unconstitutional as applied.

Thus, the as-applied claim fails because Plaintiffs never identify an application. Their theory confuses dissatisfaction with conservation policy for constitutional injury and confuses a facial attack on the statutory regime for an as-applied challenge. The Fourth Cause of Action should be dismissed.

### G. THE IMPROPER DELEGATION VIOLATION STILL FAILS

Plaintiffs' unconstitutional-delegation claim suffers from a similar defect as their Ultra Vires claim: Plaintiffs mischaracterize the Act by alleging that the Legislature gave SNWA "core legislative policy choices" without standards. (ECF No. 25 at pp. 21-22.) But the plain language of the Act belies this assertion. The Legislature made the policy choice and assigned implementation to SNWA.

The Legislature may delegate authority to determine facts or the state of things upon which a statute operates. *See Sheriff, Clark Cnty. v. Luqman*, 697 P.2d 107, 110 (Nev. 1985). The Legislature does not impermissibly delegate lawmaking authority where it provides suitable standards governing the manner and circumstances of the delegated authority. *See Floyd v. Dep't of Corr.*, 536 P.3d 445, 449 (Nev. 2023).

The Act prohibits Colorado River water for certain uses. The statute directs SNWA's role in implementing that prohibition. Using SNWA's definitions and turf-designations, the purveyor members then enforce that prohibition. SNWA's role is a technical, fact-bound implementation of a legislative policy choice.

Plaintiffs improperly label SNWA's role as "legislative," separating each word from the statutory scheme around it. According to Plaintiffs, the Legislature said only "define" and "facilitate," so SNWA may not meaningfully implement anything. (ECF No. 25 at pp. 21-22.) But

it is a "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute." *Loughrin v. U.S.*, 573 U.S. 351, 358 (2014) (internal quotations and citation omitted). A directive to define terms for purposes of a statutory prohibition necessarily authorizes SNWA to give operative content to those terms. Likewise, a command to develop a plan to identify and facilitate removal necessarily authorizes SNWA to identify covered turf, create phases, set deadlines, communicate the plan, and administer waiver requests. Plaintiffs' cramped reading converts mandatory statutory orders into decorative language.

*Luqman* and *Floyd* also defeat Plaintiffs' claim.

In *Luqman*, the Nevada Supreme Court rejected an improper delegation challenge where the Legislature delegated to the pharmacy board the authority to classify controlled substances within a criminal statutory framework. *Luqman*, 697 P.2d at 110-11. The Court held that the board's role as factfinder was not an unconstitutional delegation of legislative authority. *See id*. If the Legislature may delegate classification of controlled substances within a criminal regulatory scheme, it may delegate classification of functional and nonfunctional turf within a water-conservation regime.

*Floyd* is similarly fatal. There, the Nevada Supreme Court rejected a nondelegation challenge even though the statute left significant implementation details for lethal injections to the Director of the Department of Corrections. *Floyd*, 536 P.3d at 449-52. The Act does more than announce a general policy; it identifies the water source, covered entities, covered parcels, exemption, effective date, administrative duties, plan requirements, and waiver mechanism. Like *Floyd*, NRS ch. 540 supplies additional statutory context.

Plaintiffs also wrongly argue that SNWA's waiver authority proves unconstitutional delegation. (ECF No. 25 at pp. 21-22.) It does not. Waiver authority is a standard administrative feature of regulatory programs. *E.g.*, *WAIT Radio v. F.C.C.*, 418 F.2d 1153, 1157 (D.C. Cir. 1969) (describing administrative waivers' function as "a safety valve procedure...for exemption based on special circumstances"). The Act's express, but limited, waiver authority confirms a standard administrative regime, not a rogue, shadow legislature.

The FAC's shotgun structure again obscures the analysis. Plaintiffs amalgamate delegation, vagueness, due process, enforcement, religious liberty, as-applied theories, waiver complaints, tree mortality allegations, and policy disagreement into one pile and call it unconstitutional delegation. But the question is narrow: Did the Legislature provide sufficient standards when it enacted the River Conservation Act and assigned implementation duties to SNWA? It did. The Fifth Cause of Action should be dismissed.

## H. THE SEPARATION OF POWERS CLAIM STILL FAILS

Nothing in the Response saves Plaintiffs' Sixth Cause of Action. The claim depends on a false premise that the Act, and SNWA's legislative mandate to implement it, somehow violates Nevada's separation of powers clause. It does not.

A legislatively created regime regulating Nevada's water does not violate Nevada's separation of powers even though it vests substantial decision-making authority in executive officials, including broad fact-finding and quasi-judicial functions. *See Ormsby Cnty. v. Kearney*, 142 P. 803, 808 (Nev. 1914).

Plaintiffs do not meaningfully rebut this century-old authority. Instead, Plaintiffs nakedly assert that SNWA "enforces" the River Conservation Act. (ECF No. 25 at 23:3-12). But what Plaintiffs call "enforcement" is simply legislatively mandated implementation within the statutory power of SNWA. The statute itself prohibits a particular use of Colorado River water. The statute itself assigns SNWA definitional, planning, identification, facilitation, and waiver roles. NRS ch. 540 separately requires water-conservation planning, measures, restrictions, and incentives. Purveyor members separately administer water service rules within their own legislative authority. *E.g.*, Henderson Muni. Code Sec. 14.14.050(B); North Las Vegas Muni. Code Sec. 13.08.060(E); Boulder City Muni. Code Sec. 9-14-3(A)(5). Plaintiffs again collapse every distinct statutory role into one dramatic accusation because the actual structure defeats their narrative.

Plaintiffs' "judge, jury, and executioner" heated rhetoric does not state a claim. The FAC contains no plausible allegation that SNWA exercised judicial power reserved to Nevada courts, enacted law in place of the Legislature, or placed local employees in separate constitutional

departments in violation of Article 3. What the FAC alleges is that SNWA is implementing a conservation statute Plaintiffs dislike. That is not enough.

The separation-of-powers claim also duplicates Plaintiffs' other theories, adding no independent constitutional defect, repackaging the same allegations under a different label. This claim shuffling is precisely why the FAC is a shotgun pleading. The Court should not be required to chase Plaintiffs' theories across overlapping counts to determine whether any coherent separation-of-powers claim exists.

Stated simply, Plaintiffs' disagreement with the River Conservation Act's policy does not create a separation-of-powers violation. The Sixth Cause of Action should likewise be dismissed.

## I. THE DUE PROCESS CLAIMS STILL FAIL AS TO THE INDIVIDUALS

Plaintiffs' protean due process claim suffers from the same mischaracterization as their other claims. The dispositive threshold issue in any due process claim is whether a plaintiff holds a constitutionally protected property interest. *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994). To be protectable, a plaintiff must have "a reasonable expectation of entitlement deriving from existing rules or understandings that stem from an independent source such as state law." *Id*. (internal quotations omitted; emphasis added).

At various points, Plaintiffs nebulously assert protectable interests in trees, turf, and shade for epileptic dogs (FAC ¶ 171). At the core, however, they seek a constitutionally protectable right to use public Colorado River water. Nevada law forecloses that theory.

"The water of all sources of water supply within the boundaries of the State whether above or beneath the surface of the ground, belongs to the public." NRS 533.025. "Water is not capable of permanent private ownership; it is the use of water which the state permits the individual to appropriate. The water itself, so the statute declares, belongs to the public." *Bergman v. Kearney*, 241 F. 884, 893 (D. Nev. 1917).

The Act regulates Colorado River water. It prohibits Colorado River water from irrigating nonfunctional turf on property that is not used exclusively as a single-family residence. It does not mandate removal of anything; to the contrary, it specifically permits irrigation of nonfunctional turf using "alternative sources of water." River Conservation Act, Sec. 39(4)(b).

Even if Plaintiffs Javier, Hall, Doyle, Smith, Edington, and Merhar have a derivative property right in common areas, the Response never explains how that derivative interest becomes a constitutional right to use the ***public's*** Colorado River water. The most nimbly crafted CC&Rs cannot create that right. NRS ch. 116 further defeats the theory because HOAs may regulate common elements and install drought tolerant landscaping within common areas. *See* NRS 116.3102(1)(f); NRS 116.330(2). With no protected right to Colorado River water, there can be no deprivation implicating due process.

Plaintiffs Kelly, Lee, and Walker fare no better. The Act does not mandate removal of turf on their single-family residences. River Conservation Act, Sec. 39(1). It simply does not apply to them. Their conservation easements do not change that result. NRS 540.151(1)(a) and (c) mandate that SNWA "adopt a plan to provide incentives to encourage water conservation [and] for the installation of landscaping that uses a minimal amount of water." *See* NRS 540.151(1)(a) and (c). Plaintiffs chose to participate in incentive programs and now attempt to transform buyer's remorse into due process. It is not. The due process claim fails as to Plaintiffs Javier, Hall, Doyle, Smith, Edington, Merhar, Kelly, Lee, and Walker.

**J. SILVER STATE GOLF INDUSTRY ALLIANCE STILL LACKS STANDING**

The Silver State Golf Industry Alliance still lacks standing. A facial challenge still requires at least one member with standing and a showing that neither the claim asserted nor the relief requested requires individualized member participation. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (superseded by statute on other grounds as stated in *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544 (1996)).

Plaintiffs' own description of the Alliance's membership underscores the problem. The Alliance allegedly includes course owners, operators, allied associations, and golf-related businesses across Nevada; Plaintiffs do not allege that each member owns regulated turf, uses Colorado River water, received a turf classification, sought or was denied a waiver, faces imminent enforcement, or suffered a concrete injury. And Plaintiffs cannot cure that defect by pointing to Spanish Trail Country Club or Sun City Summerlin Community Association. Those entities are

separate named Plaintiffs, and their alleged standing, if any, does not permit the Alliance to participate in the lawsuit without properly alleging its own associational standing.

In short, Plaintiffs rely on golf course-specific harms to establish injury, then deny that course-specific proof is necessary. Article III and *Hunt* do not permit that shortcut. The Alliance's claims should be dismissed.

### K. REFERRING TO THE SEVENTH CLAIM DOES NOT SAVE THE FAC

Plaintiffs argue that SNWA did not attack the Seventh Cause of Action. But SNWA moved to dismiss the FAC in its entirety under Rule 8. Because the FAC is a shotgun pleading, Plaintiffs should replead the Seventh Cause of Action with the remainder of the FAC, identifying the specific factual allegations and legal theory supporting the claim.

### L. LEAVE TO AMEND DOES NOT JUSTIFY DENYING THE MOTION

If leave is granted, the amended pleading should be limited and structured with no incorporation of all prior allegations in every count; each count identifying the specific plaintiff(s); each count identifying the specific legal source; each count identifying the purported SNWA conduct, injury, causation, and relief; and associational standing must be pleaded with member-specific standing facts.

## III. CONCLUSION

SNWA respectfully requests that the Motion to Dismiss be granted in its entirety.

DATED this 28th day of July 2026.

**EVANS FEARS SCHUTTERT MCNULTY MICKUS**
/s/ *Jeffrey F. Barr, Esq.*
Chad R. Fears, Esq. (NBN 6970)
Jeffrey F. Barr, Esq. (NBN 7269)
6720 Via Austi Parkway, Suite 300
Las Vegas, NV 89119

Nicholas J. Santoro, Esq. (NBN 532)
Oliver J. Pancheri, Esq. (NBN 7476)
Jessica M. Lujan, Esq. (NBN 14913)
Ellsie E. Lucero, Esq. (NBN 15272)
**SPENCER FANE LLP**
300 South 4th Street, Suite 1600
Las Vegas, NV 89101

Will Kemp, Esq. (NBN 1205)
**KEMP JONES, LLP**
3800 Howard Hughes Parkway, 17th Fl.
Las Vegas, Nevada 89169

*Attorneys for Defendant*
*Southern Nevada Water Authority*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of July 2026, I electronically filed the foregoing **DEFENDANT SOUTHERN NEVADA WATER AUTHORITY'S REPLY IN SUPPORT MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF (ECF 18)** with the Clerk of the Court using the ECF system which served the parties hereto electronically.

/s/ *Jeffrey F. Barr*
An employee of **EVANS FEARS SCHUTTERT MCNULTY MICKUS**